**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nannette G. Hummel, | No. CV-16-04381-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County Adult Probation Department, | |
| Defendant. | |

At issue is Defendant's Motion for Summary Judgment (Doc. 48, Mot.), to which Plaintiff has filed a Response (Doc. 53, Resp.) and Defendant replied (Doc. 57, Reply). Plaintiff Nannette G. Hummel ("Plaintiff") alleges that Defendant Maricopa County Adult Probation Department ("Defendant" or "APD") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by terminating Plaintiff's employment instead of granting her request to either extend her medical leave or assign her to light duty. Based on the following, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff began working at APD as an adult probation officer on January 18, 2005. (Doc. 49, Statement of Facts in Supp. of MSJ ("DSOF") ¶ 1; Doc. 56, Pl.'s Controverting Statement of Facts in Supp. of Resp. ("CSOF") ¶ 1.) On October 16, 2012, Defendant terminated Plaintiff's employment. (¶ 7.) Plaintiff appealed her termination and was reinstated on June 10, 2013. (¶ 10.) Soon thereafter, Plaintiff requested to be transferred

from the Mesa office to the Northpoint office. (¶ 20.) APD granted the request on June 13, and Plaintiff began work there on June 18. (¶¶ 21–22.)

Two days later, Plaintiff began what was initially set to be a two-day leave of absence. (¶ 25.) After Plaintiff began her leave on June 20, however, she requested medical leave and remained off work until January 2014. (¶¶ 27–28.)[1]

Plaintiff submitted two additional leave requests on July 31, 2013. First, Plaintiff requested FMLA leave from July 22 to August 31 to care for her adult daughter following facial surgery. (¶ 31.) APD denied the request citing insufficient documentation that Plaintiff's daughter was disabled and unable to care for herself; however, APD did authorize Plaintiff to use accrued sick leave. (¶ 32.) Second, Plaintiff requested FMLA leave from August 15 to November 15 to undergo and recover from partial knee replacement surgery. (¶ 33.) APD approved the request on August 8. Because Plaintiff had already accrued the full 480 hours permitted under the FMLA, APD approved leave from August 15 to November 7. (¶ 34.) Plaintiff's surgery took place on August 16. (¶ 35.)

As her approved leave neared its end, Plaintiff requested additional time. On November 4, 2013, Plaintiff sent an email to APD Human Resources Analyst Mikisha Steel stating that her doctor had extended her leave until January 6, 2014. (¶ 40.) Even though APD understood this as a request for leave beyond Plaintiff's available FMLA hours, Chief Probation Officer Barbara Broderick granted the request. (¶ 41.) Broderick further advised Plaintiff that any absence beyond January 6 would be unauthorized and that to return to work, Plaintiff would need to provide medical documentation clearing her to perform the essential functions of her job. (¶ 42.)

Plaintiff returned to the office on January 6, 2014. (¶ 43.) At that time, she submitted a doctor's note dated October 31, 2013, which stated that Plaintiff would return to regular duty on January 6. (¶ 44; Doc. 49-1, Ex. P.) Steel informed Plaintiff that the note was insufficient and provided an essential functions form for her doctor to complete before she

---

[1] The parties dispute whether Plaintiff returned to work before her January 30 separation. Plaintiff maintains that she returned to work on both January 6 and January 30. (CSOF ¶ 28.) Defendant says she remained on leave until her separation. (DSOF ¶ 28.)

could return to work. (¶ 45.) Because Plaintiff could not see her doctor until January 27, Broderick approved an additional three weeks of leave. (¶ 46.) Broderick again advised Plaintiff that any absence beyond January 27 would be unauthorized and that she would need to provide a completed essential functions form. (¶ 47.) Following her January 27 doctor appointment, Plaintiff forwarded a letter to Broderick requesting additional leave until February 13 and included a completed copy of the required form. (¶¶ 48–49.) Plaintiff concedes that she was not fit to return to regular duty as of January 27. (¶ 50.) After reviewing the essential functions form completed by Plaintiff's doctor, Broderick denied Plaintiff's request by letter dated January 28. (¶ 51.) The letter further stated that as of January 28, Plaintiff's absences from work were unauthorized and that if she was absent for three or more consecutive days, she would be "automatically considered to have resigned." (¶ 57.) Three days later, APD ended Plaintiff's employment. (¶ 60.)

On March 31, 2014, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant's decision to end her employment violated the ADA. (Doc. 56, Pl.'s Separate Statement of Facts ("PSOF") ¶ 39.)[2] EEOC issued a cause determination on December 23, 2015, finding "reasonable cause to believe" Defendant had "failed to provide [Plaintiff] with a reasonable accommodation of additional medical leave and terminated her employment." (Doc. 7-1, Ex. 2.)[3] After receiving a right to sue letter, Plaintiff filed suit in this Court on December 14, 2016, and she amended her complaint on January 4, 2017. (*See* Doc. 1, Compl.; Doc. 7, Am. Compl.) Plaintiff alleges that Defendant violated the ADA by (1) failing to provide Plaintiff with a reasonable accommodation by either extending her leave or allowing her to work light duty until her doctor released her to full duty and (2) refusing to engage in the interactive process to find such an accommodation. (*See generally* Am. Compl.)

---

[2] Plaintiff's Separate Statement of Facts begins on page 12 of the docket entry.
[3] EEOC did not, as Plaintiff alleges, find that Defendant had in fact violated the ADA. (*See* PSOF ¶ 40.)

## II. LEGAL STANDARD

Summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). "Only disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that plaintiff must present affirmative evidence to defeat properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment."

- 4 -

42 U.S.C. § 12112(a). To establish a *prima facie* case, then, a plaintiff must show that she (1) is disabled; (2) is a qualified individual; and (3) has suffered an adverse employment action because of her disability. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). Here, parties' dispute hinges on the second element.

The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This definition necessarily excludes an individual who cannot perform these functions with or without such accommodation. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th Cir. 2000). Essential functions are those "fundamental job duties of the employment position" minus the position's "marginal functions." 29 C.F.R. § 1630.2(n)(1). To determine these functions, "[t]he court first examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc) (quotation omitted). The court next determines whether she can perform those functions with or without a reasonable accommodation. *Id.* The employer must produce evidence establishing which job functions are essential; however, the plaintiff retains the burden of proving she could perform those functions with or without such accommodation. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). Plaintiff has not done so here.

Defendant's central argument is that Plaintiff was not a qualified individual when she was terminated. (*See* MSJ at 9–11.) Though an adult probation officer performs other essential functions, the parties' primary dispute is whether field work—namely, visiting probationers at their homes—is one of them. Defendant cites Broderick's testimony that field work was one of several essential functions Plaintiff could not perform. (MSJ at 9 (citing DSOF ¶ 53).) Broderick also testified that field work accounted for more than fifty percent of an officer's job duties. (*Id.* at 9 (citing DSOF ¶ 55).) Defendant further points out that Plaintiff and her doctor both agree that she was not fit to perform her regular duties

1 as of her termination date. (*Id.* (citing DSOF ¶ 50; Doc. 49-1, Ex. T–Jan. 27, 2014 Note).)

2 Indeed, the last essential functions form completed by her doctor states that as of

3 January 27, 2014, Plaintiff could not lift more than ten pounds, climb, bend, kneel, process

4 large volumes of work, work closely with mechanical equipment or tools, work irregular

5 hours or changing shifts, or conduct field work—all of which are listed as essential

6 functions. (*See* Jan. 27, 2014 Note.)

7 Plaintiff does not deny any of these limitations. Nor does she dispute Defendant's

8 classification of these functions as essential—that is, aside from field work. To this point,

9 Plaintiff responds first by highlighting other testimony suggesting the typical amount of

10 field work falls between thirty and fifty percent of the job. (Resp. at 3, 7.) She then insists

11 that this estimate, too, is "far in excess of the actual portion of time she spent doing field

12 work." (*Id.*) Specifically, Plaintiff "believes based on her own experience" that field work

13 accounted for "no more than 15 [percent]" of her job duties.[4] (*Id.* at 3.)

14 Even if the Court were to credit Plaintiff's self-assigned estimate, a reasonable

15 factfinder could not conclude that field work is a marginal job function simply because it

16 accounts for a less-than-predominant share of an officer's duties. Such a finding would

17 necessarily place an arbitrary cap on the number of essential functions any one job could

18 have. Indeed, by this logic, a job with sufficiently numerous roles might have no essential

19 functions at all. The law scarcely demands such an absurdity. "The amount of time spent

20 on the job performing the function" is only one in an inexhaustive list of factors courts

21 typically consider in evaluating whether a function is essential. *See* 29

22 C.F.R. § 1630.2(n)(3)(i)–(vii); *see, e.g.*, *Moore v. Computer Assocs. Int'l, Inc.*, 653 F.

23 Supp. 2d 955, 963–64 (D. Ariz. 2009) (evaluating these factors). Plaintiff not only

24 emphasizes time spent to the exclusion of all other relevant considerations, but also omits

25 [4] This figure is based solely on Plaintiff's declaration made in opposition to Defendant's
26 motion. (*See* Doc. 56-1, Ex. A–Decl. of Nannette G. Hummel ¶ 3.) The Ninth Circuit has
long "refused to find a genuine issue where the only evidence presented is uncorroborated
27 and self-serving testimony." *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061
(9th Cir. 2002) (quotations omitted). The Court likewise declines to do so here. Even if the
28 proportion of field work was dispositive to its status as an essential function, Plaintiff has
presented no evidence beyond her own declaration that might rebut even the lower estimate
of thirty to fifty percent. *See Anderson*, 477 U.S. at 256–57.

any rationale supporting her conclusion that spending fifteen percent of the time performing field work makes that role nonessential. (*See* Resp. at 7.) She then suggests that "[i]t is not hard to conceive that [her] caseload could have included very little field work" until she was cleared for full duty. (*Id.*) Yet such speculation misses the point.

The possible diversion of Plaintiff's field work to other officers says nothing about whether it is an essential function. *See Dark v. Curry Cty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) ("The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees."). By suggesting that it does, Plaintiff collapses the qualified individual inquiry into the reasonable accommodation one. Meanwhile, such "job restructuring" appears only to cover the reallocation or redistribution of "nonessential, marginal job functions." 29 C.F.R. Pt. 1630, App.; *see also Moore*, 653 F. Supp. 2d at 962 n.5 (noting that EEOC regulations "offer valuable guidance" in interpreting ADA) (quotation omitted).

Plaintiff admits she could not perform nearly half of the functions listed as essential on the form completed by her doctor. (*See* Jan. 27, 2014 Note; PSOF ¶ 50.) And she only questioned whether one of those functions was essential—yet to no avail.[5] For these reasons, the Court finds no genuine issue of material fact as to whether Plaintiff was a qualified individual under the ADA.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 48).

. . . .

. . . .

. . . .

---

[5] Plaintiff spends much of her Response addressing her allegation that Defendant failed to engage in an interactive process. (*See* Resp. at 5–8.) But Plaintiff still must demonstrate as a threshold matter that she is a "qualified individual" under the ADA. *See Mays v. Pierce Cty.*, No. C14–5291RBL, 2015 WL 5102600, at *5 (W.D. Wash. Aug. 28, 2015) (citing *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1252 (10th Cir. 2001)); *Rancourt v. OneAZ Credit Union*, No. CV-17-00194-PHX-JJT, 2018 WL 3926491, at *3 n.1 (D. Ariz. Aug. 16, 2018) (denying interactive process claim for failure to make *prima facie* ADA case); *see also Weyer*, 198 F.3d at 1108 ("The plain language of the Act thus allows only those who are 'qualified individuals' to bring suit."). Plaintiff has not done so here; thus, the Court need not separately address this component of her ADA claim.

1    **IT IS FURTHER ORDERED** directing the Clerk to enter judgment in favor of

2  Defendant and against Plaintiff and to close this case.

3    Dated this 18th day of April, 2019.

4

5    Honorable John J. Tuchi
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28