**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nannette G. Hummel,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Maricopa County Adult Probation Department,<br><br>　　　　　Defendant. | No. CV-16-04381-PHX-JJT<br><br>**ORDER** |

This Americans with Disabilities Act ("ADA") case comes back to this Court on remand from the Ninth Circuit Court of Appeals, which issued a memorandum reversing this Court's decision granting Defendant Maricopa County Adult Probation Department's ("APD") Motion for Summary Judgment. (*See* Docs. 61, 58.) Upon remand, the Court finds the Plaintiff Nannette Hummel has raised a triable issue of fact as to whether her request for an accommodation was reasonable under the ADA. Accordingly, the Court denies Defendant's Motion.

**I.    BACKGROUND**

Plaintiff began working at APD as an adult probation officer on January 18, 2005. (Doc. 49, Def. Statement of Facts ("DSOF") ¶ 1.)[1] On October 16, 2012, Defendant terminated Plaintiff's employment. Plaintiff appealed her termination and was reinstated on June 10, 2013. Following Plaintiff's request for a transfer from the Mesa office to the

---

[1] Unless otherwise noted, all facts referenced from Defendant's Statement of Facts are undisputed by Plaintiff.

Northport office, Plaintiff began work at the Northport office on June 18, 2013. (DSOF ¶¶ 20–22.)

On June 20, 2013, Plaintiff took sick and annual leave. (DSOF ¶ 27.) On July 31, while still on leave, Plaintiff submitted two additional leave requests. First, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") from July 22 to August 31 to care for her adult daughter following facial surgery. (DSOF ¶ 31.) APD denied the request citing insufficient documentation that Plaintiff's daughter was disabled and unable to care for herself; however, APD did authorize Plaintiff to use accrued sick leave. (DSOF ¶ 32.) Second, Plaintiff requested FMLA leave from August 15 to November 15 to undergo and recover from partial knee replacement surgery. (DSOF ¶ 33.) APD approved the request on August 8. Because Plaintiff had already accrued the full 480 hours permitted under the FMLA, APD approved leave from August 15 to November 7. (DSOF ¶ 34.) Plaintiff's surgery took place on August 16. (DSOF ¶ 35.)

On November 4, 2013, Plaintiff sent an email to APD Human Resources Analyst Mikisha Steel stating her doctor had extended her recovery period until January 6, 2014. (DSOF ¶ 40.) APD understood this as a request for leave beyond Plaintiff's available FMLA hours, and Chief Probation Officer Barbara Broderick granted the request. (DSOF ¶ 41.) Broderick advised Plaintiff that any absence beyond January 6 would be unauthorized and that to return to work, Plaintiff would need to provide medical documentation clearing her to perform the essential functions of her job. (DSOF ¶ 42.)

Plaintiff returned to the office on January 6, 2014 with her doctor's note dated October 31, 2013, which stated Plaintiff could return to regular duty on January 6. (DSOF ¶¶ 43–44; Doc. 49 Ex. P.) Steel informed Plaintiff that the note was insufficient and provided an essential functions form for her doctor to complete before she could return to work. (DSOF ¶ 45.) Because Plaintiff could not see her doctor until January 27, Broderick approved an additional three weeks of leave. (DSOF ¶ 46.) Broderick advised Plaintiff that any absence beyond January 27 would be unauthorized and that she would need to provide a completed essential functions form to resume work. (DSOF ¶ 47.)

Plaintiff testified that on January 6, when she attempted to return to work, she felt "perfect," and that between January 6 and January 27, she was rehabilitating her leg by walking five miles a day and going to the gym three to four times a week. (DSOF ¶¶ 44, 51; Doc. 49 Ex. C at 74.) However, during this period, she developed bursitis in both hips. (DSOF ¶ 51.) On January 27, Plaintiff met with her doctor, who filled out the essential functions form and indicated that Plaintiff could not "at this time" perform many of the essential functions listed. (Doc. 49 Ex. R.) Her doctor projected she could return to work on February 13. (Doc. 49 Ex. R.)

Plaintiff emailed the essential functions form to Broderick on January 27 and requested additional leave until February 13. (DSOF ¶¶ 48–49.) After reviewing the form, Broderick denied Plaintiff's request by letter dated January 28. (DSOF ¶ 51.) The letter further stated that as of January 28, Plaintiff's absences from work were unauthorized and that if she was absent for three or more consecutive days, she would be "automatically considered to have resigned." (DSOF ¶ 57; *see* Ex U.)

The next day, January 29, Plaintiff emailed Steel asking for an accommodation. (Doc. 56, Pl. Separate Statement of Facts ("PSOF") ¶ 32; Doc. 56 Ex. D.) Plaintiff also told Steel that she had requested sick time through APD's timecard system, and asked Steel whether APD would allow her to use her sick and vacation time to maintain her position until she was medically cleared to return to work.[2] (Doc. 56 Ex. D.) Plaintiff submitted with her Response screenshots from her APD time-off request portal, which showed she had approximately 166 hours of accrued sick time and 240 hours of accrued vacation time. (Doc. 56 Ex. E.)

In response to Plaintiff's email, Steel stated only that, after reviewing the medical documentation Plaintiff had provided on January 27, Plaintiff was not permitted to return

---

[2] It is unclear whether Plaintiff asked Steele for an accommodation through February 13 or through February 24. Plaintiff wrote that her doctor concluded she would be medically released on February 13, but the record reflects that her next doctor's appointment was February 24. (Doc. 56 Ex. D; DSOF ¶ 54.) Plaintiff's email stated she had requested through the timecard system sick leave for two separate periods: January 30 through February 12, and February 12 through February 24. (Doc. 56 Ex. D.)

to work because her physical restrictions rendered her unable to perform the essential functions of the job. (Doc. 56 Ex. D.) Steel did not directly address Plaintiff's request for an accommodation or suggestion that she be able to use her accrued sick and vacation time. (PSOF ¶ 33; *see* Doc. 56 Ex. D.) Broderick testified she was not aware of Plaintiff's request to Steel, but had she known of it, she probably would not have approved it even if Plaintiff had available sick or annual leave to apply to her absences, "given the extent of the leave that [Plaintiff] had taken" by then. (DSOF ¶ 59.)

On January 30, 2014, Defendant terminated Plaintiff's employment by letter. (DSOF ¶ 60; *see* Doc. 46 Ex V.) Defendant contends Plaintiff "remained off work until her separation from APD" on January 30 and that as of that date, she had been absent for three consecutive days without authorization. (DSOF ¶¶ 28, 60.) Plaintiff, on the other hand, submits that she reported to work on January 30th, ready to resume employment, and that Defendant hand-delivered the separation letter. (PSOF ¶ 35.)

Plaintiff timely filed a claim with the Equal Employment Opportunity Commission ("EEOC") (PSOF ¶ 39.) The EEOC issued a cause determination on December 23, 2015, finding "reasonable cause to believe" Defendant had "failed to provide [Plaintiff] with a reasonable accommodation of additional medical leave and terminated her employment." (Doc. 7-1, Ex. 2.)[3] After receiving a right to sue letter, Plaintiff filed this action, alleging Defendant violated the ADA by (1) failing to provide Plaintiff with a reasonable accommodation by either extending her leave or allowing her to work light duty until her doctor released her to full duty and (2) refusing to engage in the interactive process to find such an accommodation. (*See generally* Doc. 7.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the

---

[3] The EEOC did not, as Plaintiff claims, find that Defendant had in fact violated the ADA. (*See* PSOF ¶ 40.)

- 4 -

movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**III.   ANALYSIS**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination, a plaintiff must show she (1) is disabled; (2) is a qualified individual; and (3) has suffered an adverse employment action because of her disability. *Mayo v. PCC Structurals, Inc.*, 795

F.3d 941, 944 (9th Cir. 2015); *see* 42 U.S.C. § 12111(8). Defendant argues that at the time of her separation date, Plaintiff was not a qualified individual because she could not perform the essential functions of the job with or without a reasonable accommodation, and therefore cannot establish a *prima facie* case under the ADA.[4] (Doc. 48 at 9–11.)

### A. Qualified Individual

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Court already determined the job duty at issue, field work, *i.e.*, visiting probationers at their homes, constituted an essential function of Plaintiff's position as a probation officer. (Doc. 58 at 6–7.) The Ninth Circuit did not disturb that finding or direct the Court to reevaluate it on remand. (*See* Doc. 67.) Further, the Ninth Circuit did not direct the Court to review the reasonableness of Plaintiff's alleged request to perform "light work," *i.e.*, sedentary office work, until she was medically cleared to resume field duties. Accordingly, per the Ninth Circuit's order, the issue on remand is whether a triable issue of fact exists as to whether Plaintiff's third request for additional leave was reasonable under the ADA. (Doc. 67 at 3.)

The ADA does not require an employer to permit an employee to take an indefinite period of medical leave or medical leave for an unspecified time period. *Dark v. Curry Cty.*, 451 F.3d 1078, 1090 (9th Cir. 2008). However, an extension of an existing leave period, and even an extended medical leave, may be reasonable accommodations under the ADA. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *see also Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). If a leave of absence would reasonably accommodate an employee's disability and permit her, upon her return, to perform the essential functions of the job, the employee is a qualified individual under the ADA. *Humphrey*, 239 F.3d at 1135–36.

---

[4] The "qualified individual" analysis employs a two-part test. First, the qualified person must possess the requisite skills, experience, education, and other qualifications for the employment position. *See Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001). Second, the individual must be capable of performing the job's "essential functions." *Id.* The parties' dispute focuses on the latter.

Determining whether Plaintiff's third request for leave "is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry. In the summary judgment context, a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." *Nunes*, 164 F.3d at 1247 (internal citations omitted).

The Court notes at the outset that despite the close of discovery, Defendant presented no evidence—and indeed, no argument—that Plaintiff's request for additional time would constitute an undue hardship. Instead, Defendant argues Plaintiff's third request for leave was unreasonable as a matter of law, such that no reasonable jury could conclude otherwise. The Court disagrees and, viewing the evidence in the light most favorable to Plaintiff, finds a genuine dispute of fact exists as to whether Plaintiff's third request would enable her to perform the essential functions upon her return from same. *See Humphrey*, 239 F.3d at 1135–36; *see also Ruiz v. ParadigmWorks Grp., Inc.*, 787 F. App'x 384, 386 (9th Cir. 2019).

Plaintiff's email to Steel constituted a request for an accommodation to last, at minimum, 15 days (with a return of February 13, the date her doctor had cleared her) and at maximum 26 days (with a return of February 24, the next available appointment to see her doctor). Thus, she was not seeking an indefinite period of leave, or one for an unspecified time. *See Dark*, 451 F.3d at 1090. Indeed, although the request was her third, it constituted a relatively short period and was pegged to concrete dates. Plaintiff also suggested Defendant permit her to use sick leave or paid time off during those weeks. She presented evidence unrebutted by Defendant that she had accrued over 400 hours, or 50 eight-hour days, of combined sick and vacation leave at the time of her request. *See Dark*, 451 F.3d at 1090 (denying summary judgment to the defendant and finding the defendant "was obligated to consider" the plaintiff's 712 hours (89 days) of accumulated sick leave in assessing his request for an accommodation).

Plaintiff also submits that when she returned to work on January 6 (the date her doctor had projected in October), she believed she was ready to work and felt "perfect," but that Defendant required an updated doctor's note and essential functions sheet. While waiting to see her doctor, she was exercising relatively extensively, and developed bursitis as a result. A reasonable juror could find additional leave of several weeks would have enabled her to perform the functions of her job because the bursitis was a separate, although perhaps related, injury from her knee injury, and therefore may require a different and quicker recovery period. In other words, the knee issue may have been resolved by January 27 and she may have needed only a few weeks to recover from the hip injury. On the other hand, a reasonable juror could also conclude that irrespective of the type or anatomical location of the injury, the fact that she reinjured herself from engagement in physical activity shows she would not be able to meet the physical demands of field work within a span of weeks.

Because two reasonable but competing inferences can be drawn from the January 6 through January 27 events, the Court is precluded from granting Defendant summary judgment. *See, e.g.*, *Gardner v. Fed. Express Corp.*, 114 F. Supp. 3d 889, 899 (N.D. Cal. 2015) (holding several facts raised the possibility that an accommodation in the form of additional leave would have allowed the plaintiff to perform the essential functions upon return, but also finding several facts raised doubt as to that possibility, and therefore denying summary judgment).

Defendant contends Plaintiff's request for an additional extension was unreasonable because APD had already granted Plaintiff two extensions, and her third request "did nothing to reassure APD that such requests would not continue indefinitely." (Doc. 57 at 2.) However, an employee need not show a leave of absence is certain or even likely to be successful to prove it is a reasonable accommodation. *Humphrey*, 239 F.3d at 1136. Further, multiple extensions are not unreasonable as a matter of law. *See, e.g.*, *Nunes*, 164 F.3d at 1245–46; *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 83 Cal. Rptr. 3d 190, 222 (Ct. App. 2008) ("[T]he mere fact that a medical leave has been repeatedly extended does

1  not necessarily establish that it would continue indefinitely."). Indeed, the primary case on
2  which Defendant relies, *Ruiz v. Paradigmworks Grp., Inc.*, 2018 WL 1010475, at *3 (S.D.
3  Cal. Feb. 22, 2018), in which the district court held the plaintiff's third consecutive request
4  for leave based on a doctor's note was not a reasonable accommodation, was recently
5  reversed by the Ninth Circuit. *See Ruiz*, 787 F. App'x at 386. At the same time, "the fact
6  that a prior leave was granted and was unsuccessful may be a relevant consideration in
7  determining whether additional leave would be a reasonable accommodation." *Humphrey*,
8  239 F.3d at 1136 n.10. This type of consideration, however, is appropriate for the finder of
9  fact, who must decide whether the additional weeks of requested leave would have
10 permitted Plaintiff to perform field work upon resumption of her job.

## B.   Plaintiff's Interactive Process Claim

Plaintiff alleges in her First Amended Complaint and argues in her Response that Defendant violated the ADA by failing to engage in the interactive process once Plaintiff requested an accommodation by email to Steel on January 29, 2014.

The ADA "treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transpo. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018), *cert. denied sub nom. Snapp v. Burlington N. Santa Fe Ry. Co.*, 139 S. Ct. 817, (2019) (citing 42 U.S.C. § 12112(b)(5)(A)). In other words, Plaintiff cannot have a stand-alone claim for failing to engage in the interactive process without first showing she was a qualified individual, *i.e.*, she could perform the essential functions of a probation officer with a reasonable accommodation. *See id.* Because a genuine dispute of fact exists as to whether Plaintiff was a qualified individual, the Court declines to assess the merits of Plaintiff's interactive process claim at this stage.

**IT IS THEREFORE ORDERED** denying Defendant's Motion for Summary Judgment (Doc. 48).

**IT IS FURTHER ORDERED** that this action is referred to Magistrate Judge

- 9 -

Michael T. Morrissey to conduct a settlement conference. Counsel shall jointly call Magistrate Judge Morrissey's chambers at (602) 322-7680 within 14 days to schedule a date.

Dated this 1st day of July, 2020.

Honorable John J. Tuchi
United States District Judge